[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
June 30, 2005
THOMAS  K. KAHN
CLERK

_____

No. 04-13709
Non-Argument Calendar
_____

D. C. Docket No. 04-80016-CR-KLR

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

NECODAINE JEAN LOUIS, a.k.a. Mecco,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(June 30, 2005)

Before BARKETT and MARCUS, Circuit Judges, and GEORGE[*], District Judge.

PER CURIAM:

_____

[*] Honorable Lloyd D. George, United States District Judge for the District of Nevada, sitting by designation.

Necodaine Jean Louis appeals his 135-month sentence for conspiracy to import at least five kilograms of cocaine and one hundred kilograms of marijuana into the United States, in violation of 21 U.S.C. §§ 952(a), 960(b)(1)(B), 960(b)(2)(G), and 963. On appeal, Jean Louis challenges the district court's refusal to grant a mitigating-role downward adjustment under U.S.S.G. § 3B1.2, and its refusal to grant a downward departure under U.S.S.G. § 5K2.20 on the basis that his criminal activity constituted "aberrant behavior." Additionally, he makes the claim, also preserved below, that his sentence is unlawful in light of Blakely v. Washington, 542 U.S. __, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004), and thus by extension, United States v. Booker, 543 U.S. __, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005). We find no clear error in the district court's decision to refuse the mitigating-role downward adjustment, and find that we lack authority to review its decision to refuse an "aberrant behavior" downward departure. We also find that any Blakely/Booker error was harmless, and accordingly affirm Jean Louis' sentence.

## I. BACKGROUND

The government's factual proffer at Jean Louis' change of plea hearing alleged the following facts, to which Jean Louis agreed. Off the coast near Fort Lauderdale, Florida, law enforcement officers apprehended two boats traveling in

2

tandem from the Bahamas to the United States, each with one person aboard. One of the boats contained approximately 314 kilograms of cocaine and over 100 kilograms of marijuana. William Stevens, the occupant of the other watercraft, named Jean Louis as the intended recipient of the drugs. Agreeing to cooperate with police, Stevens called Jean Louis and arranged to deliver the drugs to him at a rail station in Broward County. Jean Louis arrived at the rail station in a minivan, which was loaded with the drugs from the boat. Police then arrested him.

After being charged, Jean Louis pled guilty to one count of conspiracy to import at least five kilograms of cocaine and one hundred kilograms of marijuana into the United States, in violation of 21 U.S.C. §§ 952(a), 960(b)(1)(B), 960(b)(2)(G), and 963. The probation officer, in Jean Louis' presentence investigation report (PSI), found that he was responsible for 313.5 kilograms of cocaine and 225.7 kilograms of marijuana. As 313.5 kilograms of cocaine is the equivalent of 62,700 kilograms of marijuana for sentencing purposes,[1] the PSI held Jean Louis responsible for a total of 62,925.7 kilograms of marijuana, and set his base offense level at 38 pursuant to U.S.S.G. § 2D1.1(a)(3). The PSI then recommended a two-level safety-valve reduction under U.S.S.G. §§ 2D1.1(b)(6)

---

[1] One gram of cocaine is equivalent to two hundred grams of marijuana for purposes of calculating the quantity of controlled substances under U.S.S.G. § 2D1.1. U.S.S.G. § 2D1.1, application note 10 (2003).

3

and 5C1.2(a)(1)-(5), a two-level downward adjustment for acceptance of responsibility under § 3E1.1(a), and a one-level downward adjustment for assisting authorities in the investigation of his own misconduct under § 3E1.1(b), bringing his total recommended offense level to 33. Coupled with its finding that Jean Louis had a criminal history category of I, the PSI recommended a sentencing range of 135 to 168 months' imprisonment.

Jean Louis raised two objections to the PSI's recommendation, reflected in the PSI's Second Addendum: (1) that he qualified for a two-level downward adjustment based on his mitigating role in the offense under U.S.S.G. § 3B1.2; and (2) that he qualified for a downward departure because his criminal conduct was a single act of aberrant behavior under U.S.S.G. § 5K2.20. At his sentencing hearing, he also raised a Blakely objection on the grounds that sentencing him under the federal sentencing guidelines violated his Sixth Amendment rights. The district court overruled all three objections, and "[b]ased on [his] lack of criminal history, but due to [the] excessive drug amount involved in the instant case," sentenced him to 135 months' imprisonment, the lowest possible sentence in the applicable guidelines range. This appeal followed.

## II. DISCUSSION

**A. The District Court's Refusal to Grant a Mitigating-Role Downward Adjustment under U.S.S.G. § 3B1.2**

4

A district court's determination of a defendant's role in the offense under U.S.S.G. § 3B1.2, and thus its refusal to apply a mitigating-role downward adjustment pursuant to that section, is a finding of fact reviewable for clear error.[2] United States v. Rodriguez De Varon, 175 F.3d 930, 937 (11th Cir. 1999) (en banc). The proponent of the downward adjustment bears the burden of proving he played a mitigating role in the offense by a preponderance of the evidence. Id. at 939.

The government argues, however, that we must review Jean Louis' claim for plain error only, because he failed to state the grounds for his mitigating-role objection with sufficient clarity before the district court to preserve the issue for appellate review. However, all that we require of a defendant to preserve an objection to his sentence is to raise the issue "in such clear and simple language that the trial court may not misunderstand it." United States v. Zinn, 321 F.3d 1084, 1087 (11th Cir. 2003) (quoting United States v. Riggs, 967 F.2d 561, 564 (11th Cir. 1992)). Only "if [the defendant's] point is so obscurely hinted at that the trial court quite excusably may fail to grasp it" will we determine that the objection

---

[2] "Although Booker established a 'reasonableness' standard for the sentence finally imposed on a defendant," Booker does not alter the standards we use to review a district court's application of the U.S. Sentencing Guidelines. United States v. Crawford, 407 F.3d 1174, 1178 (11th Cir. 2005).

was not properly preserved.  Id. at 1087-88 (quoting Riggs, 967 F.2d at 564).

Thus, we do not require an exhaustive explanation from the defendant justifying

his objection in order to preserve it, but simply a statement clear enough to let the

district court know upon what legal basis the objection rests.  See id.  The PSI's

Second Addendum and the sentencing transcript indicate that Jean Louis clearly

stated his mitigating-role objection and provided a brief factual basis for it.  Jean

Louis has therefore properly preserved this objection for appeal.

In support of his claim that he is entitled to a mitigating-role adjustment,

Jean Louis argued, in his objections to the PSI, that he was one of twenty-seven

people recruited by others to act as couriers to collect and deliver drug proceeds to

money launderers.  Moreover, he states in his brief to this court that he merits the

downward adjustment because he was not an "active participant" in the conspiracy

for which he was sentenced.  Rather, he claims he played the minor or minimal role

of "sit[ting] here in the U.S. and wait[ing] for delivery" of the drugs while the

other two participants were actively importing the drugs into the United States.

We are not persuaded.  The district court's determination of the defendant's

role in the offense under § 3B1.2 should be guided by two principles.  First, it

should look at "the defendant's role in the relevant conduct for which she has been

held accountable at sentencing," that is, the conduct relevant for the purpose of

6

calculating her base offense level. Rodriguez De Varon, 175 F.3d at 940-41.

Second, it should examine the defendant's "role as compared to that of other participants in her relevant conduct." Id. at 940. Jean Louis' conduct, examined under both principles, supports the district court's decision to deny the downward adjustment. Jean Louis' base offense level was based on his involvement in a three-person conspiracy to import drugs into the United States. As the only individual in charge of receiving the imported drugs, his role in that scheme was not minor or minimal as contemplated by § 3B1.2. And despite his contentions to the contrary, Jean Louis' role in the offense was hardly "passive." He took affirmative steps to receive and distribute the imported drugs once they arrived in the United States. Nor does Jean Louis' assertion that he was one of twenty-seven people involved in the same behavior weigh much, if at all, in his favor, because his base offense level was calculated for his participation in a narcotics importation conspiracy involving only three people, and his role in that conspiracy was considerable.

Jean Louis' role in the charged conspiracy was also not minor or minimal as compared to that of the two other participants in the conduct relevant to setting his base offense level. The sole recipient of the imported drugs, Jean Louis played a role at least as important as that of the other two participants. Thus, we find no

7

clear error in the district court's finding that Jean Louis did not qualify for a mitigating-role downward adjustment.

**B.  The District Court's Refusal to Grant a Downward Departure for "Aberrant Behavior" Pursuant to U.S.S.G. § 5K2.20**

A district court's refusal to grant a downward departure is ordinarily unreviewable on appeal.  United States v. Ortega, 358 F.3d 1278, 1279 (11th Cir. 2003).  "Such refusals are reviewable, however, if the district court refused a downward departure because of an erroneous belief that it lacked the authority to grant one."  Id.

The record reflects, as Jean Louis concedes, that the district court knew it had authority to depart from the applicable guidelines range under U.S.S.G. § 5K2.20.  Thus, we lack authority to review the district court's refusal to depart downwards.

**C.  Blakely/Booker Error**

Pursuant to United States v. Booker, a criminal defendant's Sixth Amendment rights are violated when any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict is not admitted by the defendant or proved to a jury beyond a reasonable doubt.  125 S. Ct. at 756.  Such error is commonly termed "constitutional" Booker error.  See, e.g., United States v.

8

<u>Rodriguez</u>, 406 F.3d 1261, 1265 (11th Cir. 2005) (Carnes, J., concurring in the denial of reh'g <u>en banc</u>).  A defendant's non-constitutional rights are also violated when the district court sentences him under a mandatory, as opposed to an advisory, sentencing guidelines scheme, even if that sentence does not violate the defendant's constitutional rights (so-called "non-constitutional" or "statutory" <u>Booker</u> error).  <u>United States v. Shelton</u>, 400 F.3d 1325, 1330-31 (11th Cir. 2005).  When a defendant preserves a <u>Blakely</u>/<u>Booker</u> objection to his sentence before the district court, we review his sentence <u>de novo</u>, and will grant relief unless the error is harmless.  <u>United States v. Paz</u>, 405 F.3d 946, 948 (11th Cir. 2005).

Any <u>Booker</u> error, constitutional or non-constitutional, was harmless in this case.  Constitutional <u>Booker</u> error is harmless when the government can prove beyond a reasonable doubt that the district court would have imposed an equivalent or greater sentence had it sentenced the defendant under an advisory, rather than a mandatory, sentencing guidelines scheme.  <u>See</u> <u>United States v. Davis</u>, 407 F.3d 1269, 1270-71 (11th Cir. 2005).  "Non-constitutional error is harmless when it does not affect the substantial rights of the parties[;] … we must reverse only if the error resulted in actual prejudice because it had substantial and injurious effect or influence on [the defendant's] sentence." <u>United States v. Petho</u>, __ F.3d __, No. 04-15412, 2005 WL 1160640, at *1 (11th Cir. May 18, 2005) (internal citations

9

and marks omitted). Because the non-constitutional harmless error standard is easier for the government to meet than the constitutional standard, see United States v. Robles, 408 F.3d 1324, __, No. 04-13598, 2005 WL 1083487, at *3 (11th Cir. May 10, 2005), if a constitutional Booker error is harmless, any corresponding non-constitutional Booker error is harmless as well.

In this case, the trial judge explicitly indicated that he would have imposed the same 135-month sentence if he had been completely unfettered by sentencing guidelines altogether, and thus free to sentence anywhere within the minimum and maximum set by the statute for the offense of conviction. Thus, because the district court would have imposed the same sentence if it had even more discretion than the advisory sentencing guidelines scheme established by Booker permits, any Booker error was harmless beyond a reasonable doubt. If the district court felt that the 135-month sentence imposed under the mandatory guidelines was still appropriate given unfettered discretion to sentence anywhere within the statutory range, it surely would have felt that same sentence appropriate had it been constrained, as Booker commands, to "take account of the Guidelines together with other sentencing goals" outlined in 18 U.S.C. § 3553(a). 125 S. Ct. at 764-65.

For the foregoing reasons, Jean Louis' sentence is hereby

**AFFIRMED.**

10