NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0472n.06

Case No. 21-1080

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | **FILED** |
| Plaintiff - Appellee, | ) | Oct 19, 2021 |
| | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| ROCKY KRUPA, | ) | STATES DISTRICT COURT FOR THE |
| | ) | WESTERN DISTRICT OF MICHIGAN |
| Defendant - Appellant. | ) | |
| | ) | |

Before: CLAY, GIBBONS, and BUSH, Circuit Judges.

JULIA SMITH GIBBONS, Circuit Judge. Rocky Krupa appeals his within-guidelines sentence of 90 months' imprisonment for participation in a heroin conspiracy in violation of 21 U.S.C. § 846 and possession of heroin with intent to distribute in violation of 21 U.S.C. § 841(a)(1). Krupa pled guilty without a plea agreement. He argues that the district court incorrectly calculated his Criminal History Category and erred in failing to adequately consider factors related to his family situation. Because the district court did nor err or abuse its discretion in its sentencing decision, we affirm.

I.

After being released on parole in July 2018 from the Newberry Correctional Facility in the Michigan Department of Corrections ("MDOC") for a state court conviction for delivering and manufacturing controlled substances, Rocky Krupa and still-incarcerated codefendant Luis Alberto Cruz began communicating via telephone about a source of drug supply in Mexico. Cruz,

from inside the prison, worked with Krupa, other codefendants (many of whom were connected to MDOC), and the supplier in Mexico to coordinate the payment and delivery of heroin. After several telephone calls with Cruz, Krupa confirmed that he had received his first package of heroin on November 23, 2018. Throughout 2019 and 2020, Krupa continued his participation in the conspiracy by acquiring and distributing drugs. On June 24, 2020, a federal grand jury returned a superseding indictment charging Krupa and eight codefendants with conspiracy to distribute and possess with intent to distribute controlled substances in violation of 21 U.S.C. § 846. The grand jury also charged Krupa with possession with intent to distribute heroin in violation of 21 U.S.C. § 841(a)(1). Krupa pled guilty to both counts without a plea agreement on August 24, 2020, making him one of the first participants in the conspiracy to plead guilty. The district court accepted Krupa's guilty plea on September 8, 2020.

In the Final Presentence Investigation Report ("PSR"), the probation office attributed 256.67 grams of heroin to Krupa's participation in the conspiracy, resulting in a base offense level of 24, and designated him an average participant. Krupa was credited 3 points for his timely acceptance of responsibility, bringing his total offense level to 21. Krupa's multiple criminal convictions and the fact that the present offenses were committed while he was on parole resulted in a criminal history score of 13 and a Criminal History Category of VI. The Sentencing Guidelines provided a range of 77 to 96 months. Due to "the length and severity of [Krupa's] criminal history," the probation office recommended an upward departure from Krupa's sentencing range. DE 225, Final Presentence Investigation Report ("PSR"), SEALED, Page ID 1179.

Objecting to the PSR, Krupa argued that he should be considered a minor participant and accordingly receive a 2-level reduction. Krupa also raised arguments against the probation office's

recommendation for an upward departure due to his criminal history. Krupa emphasized his family relations and the support he had received from his family, as evidenced by multiple letters submitted to the court. After the government's sentencing memorandum argued that Krupa was properly scored as an average participant by detailing the extent of his participation, Krupa withdrew his objection requesting a 2-level reduction as a minor participant but maintained his other arguments.

At Krupa's sentencing hearing on January 8, 2021, the court announced that Krupa had withdrawn his objection to the PSR and "score[d] th[e] case under the advisory guidelines at Offense Level 21, Criminal History Category VI, resulting in an advisory guideline range of 77 to 96 months." DE 337, Sentencing Tr., Page ID 2304. When asked by the court, Krupa's counsel stated that he had reviewed the PSR with Krupa, had no objections to the PSR, and concurred in the advisory guidelines range. The court then asked Krupa if had reviewed the report with his lawyer and whether he was satisfied with his lawyer's work. Krupa answered each question affirmatively.

The court stated that it had "considered all of the defendant's arguments in support of his request for a lower sentence." *Id.* at 2315. The court articulated its consideration of the 18 U.S.C. § 3553 factors, including the seriousness of the two offenses and the fact that "[h]eroin is a significant controlled substance problem within the Western District of Michigan." *Id.* at 2317. The court considered "the connection of th[e] conspiracy to individuals who were inside a Michigan Department of Corrections facility," which "goes to the heart of the security of state prisons," to be an "aggravating factor." *Id.* The court "accept[ed] the assertion by [Krupa] and his lawyer that his drug problem was a major instigator for his involvement" and credited Krupa with an "eloquent allocution." *Id.* at 2317–18. Although the court noted that Krupa "has a

terrible record," it acknowledged that the majority of his record consisted of driving offenses. *Id.* at 2318-19. The court declined to grant the upward departure from the advisory guideline sentence recommended by the probation office because "a guideline sentence towards the middle of the guideline range . . . would promote respect for law, provide just punishment, and reflect the seriousness of the offense behavior." *Id.* at 2319. After announcing Krupa's 90-month sentence, Krupa's counsel stated that he did not have any legal objections to the sentence imposed and that he was satisfied that all of Krupa's arguments had been addressed on the record. Krupa filed a notice of appeal that same day.

## II.

The "district court's mandate is to impose 'a sentence sufficient, but not greater than necessary, to comply with the purposes' of section 3553(a)(2)." *United States v. Foreman*, 436 F.3d 638, 644 n.1 (6th Cir. 2006), *abrogated on other grounds*, *United States v. Young*, 580 F.3d 373 (6th Cir. 2009). "We review sentences for reasonableness," *United States v. Collington*, 461 F.3d 805, 807 (6th Cir. 2006) (citing *United States v. Webb*, 403 F.3d 373, 383 (6th Cir. 2005)), under a "deferential abuse-of-discretion standard," *Gall v. United States*, 552 U.S. 38, 52 (2007). When a "sentence[] [is] properly calculated under the Guidelines," it is "credit[ed] with a rebuttable presumption of reasonableness" on appeal. *United States v. Williams*, 436 F.3d 706, 708 (6th Cir. 2006). Sentences "must be both substantively reasonable and procedurally reasonable." *United States v. Caver*, 470 F.3d 220, 248 (6th Cir. 2006) (citing *Collington*, 461 F.3d at 808).

Krupa argues that the district court was "hampered by the advisory Sentencing Guidelines, which conflict with the 18 USC §3553 [sic] factors; the guidelines as they relate to family, hearth and home seem to treat them as largely irrelevant, despite most of 20th and 21st century

criminology." CA6 R. 20, Appellant Br., at 23. Krupa essentially argues that the Sentencing Guidelines should not be used, because they "focus primarily on punishment, and not on rehabilitation and deterrence as required by 18 USC 3553 [sic] and supported by most studies on penology and criminology." *Id.* at 24 n.4. These arguments are contrary to the Supreme Court's clear precedent that district courts should use the Guidelines as "the starting point and the initial benchmark" for its sentencing calculations, so we reject them. *Gall*, 552 U.S. at 49; *see also United States v. Bolds*, 511 F.3d 568, 579 (6th Cir. 2007).

Krupa challenges the procedural and substantive reasonableness of his sentence. He argues that the district court erred in calculating his Criminal History Category and in its sentencing decision because Krupa's "plea for leniency based on 18 USC §3553 [sic] factors was reasonable." CA6 R. 20, Appellant Br., at 23. Krupa asserts that his family "will be placed in a situation of exceptional financial and emotional risk." *Id.* at 26. Krupa did not raise these arguments below, and they fail on appeal. Because the district court correctly calculated Krupa's Criminal History Category and selected a reasonable sentence based on permissible factors, we affirm.

A.

A sentence is "procedurally unreasonable if 'the district judge fails to "consider" the applicable Guidelines range or neglects to "consider" the other factors listed in 18 U.S.C. § 3553(a), and instead simply selects what the judge deems an appropriate sentence without such required consideration.'" *Collington*, 461 F.3d at 808 (quoting *Webb*, 403 F.3d at 383). In determining a sentence, the district court must "consider[] all of the § 3553(a) factors," *Gall*, 552 U.S. at 53, and "communicate clearly its rationale for imposing the specific sentence," *United States v. Richardson*, 437 F.3d 550, 554 (6th Cir. 2006). The district court need not, however, engage in a "ritualistic incantation" or "make specific findings relating to each of the factors

considered." *United States v. McClellan*, 164 F.3d 308, 310 (6th Cir. 1999) (quoting *United States v. Washington*, 147 F.3d 490, 491 (6th Cir. 1998)).

Because Krupa failed to raise any procedural objections to his sentence in the district court, his claim is reviewed for plain error. *United States v. Bostic*, 371 F.3d 865, 872–73 (6th Cir. 2004). To establish plain error, Krupa must show (1) "an error or defect" by the district court that (2) was "clear or obvious," (3) "affected [his] substantial rights," and (4) "affect[ed] the fairness, integrity or public reputation of judicial proceedings." *United States v. Ataya*, 884 F.3d 318, 322 (6th Cir. 2018) (quoting *Puckett v. United States*, 556 U.S. 129, 135 (2009)).

Krupa argues that his January 18, 2002, conviction for operating while intoxicated should have been scored as a 2-point instead of a 3-point conviction because his one-year sentence was not longer than one year and one month. If this conviction had been scored as a 2, Krupa's Criminal History Category would have decreased from VI to V and his sentencing range would have been 70 to 87 months. *See* USSG §5A. After Krupa's release from custody following that conviction, however, he violated his parole and was subsequently sentenced to 18 to 60 months' imprisonment. The Sentencing Guidelines state that "[i]n the case of a prior revocation of probation, parole, supervised release, special parole, or mandatory release, add the original term of imprisonment to any term of imprisonment imposed upon revocation. The resulting total is used to compute the criminal history points for §4A1.1(a), (b), or (c), as applicable." USSG §4A1.2(k)(1). We have consistently applied §4A1.2(k)(1) to uphold 3-point conviction scores when violations of probation or parole resulted in a higher point allocation than the original sentence would have received. *See, e.g.*, *United States v. Galvan*, 453 F.3d 738–40 (6th Cir. 2006) (upholding the district court's 3-point conviction score after revocation of probation resulted in an

aggregate sentence of more than thirteen months although the original sentence was 65 days). The district court did not err in allocating 3 points for this conviction.

The district court carefully and reasonably considered all of the § 3553(a) factors, particularly "the nature and circumstances of the offense and the history and characteristics of the defendant[,] . . . the seriousness of the offense," and the need to "afford adequate deterrence." DE 337, Sentencing Tr., Page ID 2315–16. The court "communicate[d] clearly its rationale for imposing the specific sentence," *Richardson*, 437 F.3d at 554, and appropriately considered the aggravating and mitigating circumstances brought to its attention, including that Krupa's "drug problem was a major instigator for his involvement in these offenses." DE 237, Sentencing Tr., Page ID 2317.

We need not proceed with the remaining elements of plain error review because there was no error. *See United States v. Igboba*, 964 F.3d 501, 510 (6th Cir. 2020) (citing *United States v. Donadeo*, 910 F.3d 886, 893 (6th Cir. 2018)).

B.

A sentence is "substantively unreasonable when the district court selects a sentence arbitrarily, bases the sentence on impermissible factors, fails to consider relevant sentencing factors, or gives an unreasonable amount of weight to any pertinent factor." *United States v. Conatser*, 514 F.3d 508, 520 (6th Cir. 2008) (citing *Webb*, 403 F.3d at 385). A district court's sentencing decision must be given "due deference." *Gall*, 552 U.S. at 51. "[T]hat the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court." *Id.* Overcoming the rebuttable presumption of reasonableness is "no small burden," as we "will not generally 'second guess' sentences on substantive grounds when they fall in the range prescribed by the Guidelines." *United States v.*

*Simmons*, 587 F.3d 348, 365 (6th Cir. 2009) (quoting *United States v. Davis*, 537 F.3d 611, 618 (6th Cir. 2008)).

Krupa argues that we should vacate the district court's sentence because of the high risk of emotional and psychological damage and financial deprivation to his family. Relying on *United States v. Husein*, 478 F.3d 318 (6th Cir. 2007), Krupa asserts that the district court did not adequately consider factors related to "the loss of caretaking or financial support" that would have justified a downward departure. CA6 R. 20, Appellant Br., at 24. In *Husein*, we articulated guidance for district courts considering a downward departure "based on extraordinary family circumstances" and upheld a downward departure against the government's challenge. 478 F.3d at 326, 329–30. That case is inapplicable here, where Krupa is arguing that the district court erred in granting him a within-guidelines sentence.

Although he was given several opportunities to raise further arguments in the district court, Krupa never suggested that he was "irreplaceable" to his family, which could have led to a determination of extraordinariness under §5H1.6, cmt. 1(B) of the Sentencing Guidelines. *See id.* at 327. Unlike in *Husein*, neither Krupa's Sentencing Memorandum nor the PSR revealed that Krupa was "irreplaceable." Since Krupa did not seek a downward departure from the district court, he waived that claim. *United States v. Wheaton*, 517 F.3d 350, 370 (6th Cir. 2008) (citing *United States v. Ware*, 282 F.3d 902, 907 (6th Cir. 2002)). Even if Krupa had moved for a downward departure, "a district court's decision to deny a motion for a downward departure may not be reviewed unless the district court incorrectly believed that it lacked discretion to depart downward." *United States v. Carter*, 510 F.3d 593, 600 (6th Cir. 2007) (citing *United States v. Puckett*, 422 F.3d 340, 344–46 (6th Cir. 2005)). The record reflects that the district court clearly

understood its discretion in the sentencing process. The district court cannot consider arguments not brought to its attention, and we cannot find Krupa's sentence unreasonable.

### III.

Because the district court did not err in its calculation of Krupa's Criminal History Category or otherwise abuse its discretion in sentencing, we affirm.